1    MAURICE SUH, SBN 147485
      msuh@gibsondunn.com
2    DANIEL WEISS, SBN 242022
      dweiss@gibsondunn.com
3    GIBSON, DUNN & CRUTCHER LLP
      333 South Grand Avenue
4    Los Angeles, CA 90071-3197
      Telephone: 213.229.7000
5    Facsimile: 213.229.7520

6    Attorneys for Applicant,
      Her Majesty The Queen

7

**ORIGINAL**

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11    *In re* Application of:       CASE NO. 2:13 MC 144

12    Her Majesty The Queen,       **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AN**
13            Applicant,       ***EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 FOR**
14    For the Issuance of a Subpoena for the       **THE ISSUANCE OF A SUBPOENA**
      Taking of a Deposition In A Foreign       **TO PAUL SLOAN FOR THE TAKING**
15    Proceeding Pursuant to 28 U.S.C.       **OF A DEPOSITION FOR USE IN A**
      § 1782       **FOREIGN PROCEEDING**
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ............................................................ 3

      A.    The Tax Court Has Issued a Commission for Mr. Sloan's
            Deposition ......................................................................... 3

      B.    Canadian Tax Court Proceedings ........................................... 4

      C.    The *Sackman* Case ............................................................. 5

      D.    Mr. Sloan Has Material and Key Evidence ............................... 6

      E.    The Crown's Attempts to Obtain the Necessary Evidence Have
            Been Unsuccessful .............................................................. 7

III.  SECTION 1782 ENTITLES THE CROWN TO TAKE DISCOVERY
      FROM MR. SLOAN ...................................................................... 7

      A.    The Crown Satisfies the Statutory Requirements of Section 1782 ........... 7

      B.    The Intel Discretionary Factors Favor Granting the Crown's
            Application. ....................................................................... 9

      C.    The Crown's Filing of This Application *Ex Parte* and Without Prior
            Notice to Mr. Sloan is Warranted by the Interests of Justice ................... 10

IV.   CONCLUSION ............................................................................ 11

# TABLE OF AUTHORITES

Page(s)

**Cases**

*In re Futurecorp Intern. Pty Ltd.,*
2012 WL 5818288 (N.D. Cal. Nov. 15, 2012) .......................................................... 9

*In re Letters of Request to Examine Witnesses from Court of Queen's Bench for Manitoba, Canada,*
59 F.R.D 625 (N.D. Cal. 1973) ............................................................................... 8

*In re Letters Rogatory from the Tokyo District, Japan,*
539 F.2d 1216 (9th Cir. 1976) ................................................................................ 2

*In re Premises Located at 840 140th Avenue, N.E., Bellevue, Wash.,*
634 F.3d 557 (9th Cir. 2011) .................................................................................. 9

*In re Republic of Ecuador,*
2010 WL 3702427 (N.D. Cal. Sep.15, 2010) ............................................... 7, 10, 11

*In re Roz Trading Ltd.,*
2007 U.S. Dist. LEXIS 2112 (N.D. Ga. Jan. 11, 2007) ........................................... 9

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) ............................................................................................ 8, 9

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP,*
376 F.3d 79 (2d Cir. 2004) ..................................................................................... 9

**Statutes**

28 U.S.C. § 1782 ............................................................................................ 2, 3, 7

**Rules**

Fed. R. Civ. P. 26 .................................................................................................. 3

Fed. R. Civ. P. 30 .................................................................................................. 3

Fed. R. Civ. P. 45 .................................................................................................. 3

Gibson, Dunn & Crutcher LLP

1

## I.    INTRODUCTION

2     Applicant Her Majesty The Queen (the "Crown") respectfully applies to this

3   Court for an order pursuant to 28 U.S.C. § 1782 to obtain deposition testimony from

4   Paul Sloan for use in a foreign proceeding before the Tax Court of Canada (the "Tax

5   Court") to which the Crown is a party.  The foreign proceeding is styled *Jeffrey*

6   *Sackman v. Her Majesty the Queen*, Docket: 2002-4824(IT)G (the "*Sackman* Case").

7   Critically, the Tax Court, after full briefing by the parties in the *Sackman* Case, found

8   that Mr. Sloan's testimony is relevant and issued a Commission and a Letter of

9   Request in order to facilitate the Crown obtaining Mr. Sloan's testimony.

10     The issue in the *Sackman* Case is the fair market value of prints donated by Mr.

11   Sackman to various charities in his 1999 and 2000 taxation years.  During these years,

12   Mr. Sackman participated in a buy low/donate high art donation program marketed by

13   Artistic Ideas Inc. ("Artistic").  The Artistic program was marketed to potential donors

14   as a tax avoidance arrangement.  Donors were told they would benefit from their

15   participation by receiving a large discount on their taxes.  Artistic arranged, *inter alia*,

16   for the appraisal of the prints and for their donation to charities.  These charities, in

17   turn, issued donation receipts reflecting a value in excess of the purchase price.  Mr.

18   Sackman used the donation receipts to claim donation tax credits in filing his income

19   tax returns.

20     Artistic sourced the prints used in the donation program from Coleman Fine Arts

21   and Silver Fine Arts, both owned by Paul Sloan, a resident of California.  Mr. Sloan is

22   the witness the Crown seeks to depose.  As the Tax Court already found, Mr. Sloan has

23   relevant and necessary evidence regarding the initial acquisition price for the artwork

24   ultimately donated, and details regarding his involvement in the donation program.

25     The Crown has sought to obtain the desired evidence from Mr. Sackman and

26   Mr. Sloan, including requesting that Mr. Sloan voluntarily appear at the trial in the

27   *Sackman* Case, but the Crown's efforts have been unsuccessful.  As a result, the Crown

28   requested that the Tax Court issue a Commission and Letter of Request seeking

Gibson, Dunn &
Crutcher LLP

1

1  assistance from the judicial authorities of the United States in obtaining the testimony

2  of Mr. Sloan.  Mr. Sackman opposed the Crown's request, but the Tax Court granted

3  the Crown's request over Mr. Sackman's objection.  Thus, on December 19, 2012, the

4  Registrar of the Tax Court of Canada issued a Letter of Request to the "Judicial

5  Authorities of the United States of America" requesting that the judicial authorities

6  "locate" and "cause" Mr. Sloan "to appear before the Commissioner by the means

7  ordinarily used in your jurisdiction" and answer questions under oath or affirmation.

8       The Crown's Application satisfies both the statutory and discretionary

9  requirements for issuance of a deposition subpoena.  Under 28 U.S.C. § 1782, "[t]he

10  district court of the district in which a person resides or is found may order him to give

11  his testimony or statement or to produce a document or other thing for use in a

12  proceeding in a foreign or international tribunal . . .," and such orders are routinely

13  issued on an *ex parte* basis.  *See, e.g.*, *In re Letters Rogatory from the Tokyo District,*

14  *Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976).  Consistent with the liberal discovery

15  provided under the Federal Rules, the standard to issue a subpoena under Section 1782

16  is low and this Application satisfies each of Section 1782's statutory prerequisites: (i)

17  Mr. Sloan is believed to "reside" or may be "found" in this Court's District, (ii) the

18  discovery sought by the Crown is for "use in" a foreign or international proceeding,

19  and (iii) the Crown is an "interested person" in that proceeding.  *See* 28 U.S.C. § 1782.

20  Further, as set forth below, the discretionary factors a court considers in determining

21  whether to grant a Section 1782 request also favor granting this Application:  (1) Mr.

22  Sloan is not a participant in the foreign proceeding; (2) the Tax Court is receptive to

23  Section 1782 assistance from federal courts, as it granted the Crown's request for a

24  Commission and issued a Letter of Request; (3) this Application does not conceal an

25  attempt to circumvent foreign proof-gathering restrictions and is a good faith effort to

26  obtain probative evidence; and (4) the limited testimony sought from Mr. Sloan is not

27  unduly intrusive or burdensome.

28       Accordingly, the Crown hereby submits its *Ex Parte* Application to this Court

Gibson, Dunn &
Crutcher LLP

2

1   for an Order, under 28 U.S.C. § 1782 and Rules 26, 30 and 45 of the Federal Rules of

2   Civil Procedure, granting the Crown leave to serve the subpoena attached to the

3   Declaration of Daniel L. Weiss as Exhibit A (the "Subpoena") upon Mr. Sloan, a

4   resident of the City of Los Angeles, California, for the taking of his deposition for use

5   in a foreign proceeding.

## II.   FACTUAL BACKGROUND

### A.   The Tax Court Has Issued a Commission for Mr. Sloan's Deposition

8        As a result of Mr. Sloan's unwillingness to voluntarily travel to Toronto, Canada

9   to appear at the trial of Mr. Sackman, the Crown sought a commission from the Tax

10  Court authorizing the deposition of Mr. Sloan pursuant to the Tax Court of Canada

11  Rules (General Procedure) (the "Rules").  Declaration of Martin Beaudry ("Beaudry

12  Decl."), ¶ 10; Ex. D at Tab 1.  The Tax Court is authorized under the Rules and the

13  common law to issue a commission if the following requirements are satisfied:

14      • The application for a commission is *bona fide*.

15      • The issue raised is one that should be adjudicated by the Tax Court.

16      • The witness to be examined has relevant evidence.

17      • There is good cause why the witness cannot be examined in the jurisdiction.

18  *Id.*, Ex. A at §§ 112, 119-122; Ex. E.  Mr. Sackman opposed the Crown's request for a

19  commission for Mr. Sloan's deposition.  *Id.*, at Ex. E.

20       After hearing the arguments of both parties, the Tax Court granted the Crown's

21  request for a commission for the deposition of Mr. Sloan.  *Id.*  The Tax Court found

22  that the Crown's application was *bona fide*, the issue is one that the Tax Court ought to

23  be adjudicated, the information sought is material and there is good cause why Mr.

24  Sloan cannot be examined in Canada.  *Id.*  With respect to the materiality of the

25  evidence sought, the Tax Court found that "[t]here is no doubt that the evidence sought

26  from Paul Sloan is material to the issue in this appeal and to the [Crown's] theory of

27  the case."  *Id.*  The Tax Court directed that a commission and a letter of request under

28  the Rules be issued authorizing the deposition of Mr. Sloan.  *Id.*  Pursuant to that

1    direction, the Commission and Letter of Request were issued. *Id.*, Exs. E & F.

2    On December 19, 2012, the Registrar of the Tax Court of Canada issued a Letter

3    of Request directed to the Judicial Authorities of the United States of America. *Id.*,

4    Ex. F.  The Letter of Request notes that it is necessary for witnesses residing in this

5    district to be examined and that the Tax Court has issued a commission to the

6    Honorable Valerie Miller, Justice of the Tax Court of Canada in Ottawa, Ontario, for

7    examination of Mr. Sloan. *Id.*  The Letter of Request makes a formal request to the

8    Judicial Authorities "to locate and to cause [Mr. Sloan] . . . to appear before the

9    Commissioner by the means ordinarily used in your jurisdiction, if necessary, to secure

10   attendance, and to answer questions under oath or affirmation." *Id.*

11   Mr. Sackman appealed the Tax Court's order. *Id.*, ¶ 12.  However, Mr.

12   Sackman discontinued his appeal. *Id.*

13   **B.    Canadian Tax Court Proceedings**

14   The Tax Court is a federal superior court in the Canadian judicial system, and

15   was established by the Tax Court of Canada Act. *Id.*, ¶ 2.  The Tax Court has

16   exclusive jurisdiction over matters involving the litigation of tax issues between the

17   Canadian government and Canadian taxpayers. *Id.*  In cases like the one at bar—cases

18   arising under the Income Tax Act—the Tax Court hears appeals by taxpayers taken

19   from assessments or reassessments by the Minister of Revenue of the Canada Revenue

20   Agency. *Id.*

21   In an appeal before the Tax Court, the Crown is permitted to assert "Further

22   Facts," which are allegations not before the Canada Revenue Agency in the assessment

23   process. *Id.*, ¶ 3.  The Crown bears the burden of proving these "Further Facts" during

24   the appeal. *Id.*

25   The proceedings before the Tax Court are governed by the "Rules." *Id.*, ¶ 4.

26   The Rules provide for both parties to engage in discovery in order to obtain evidence

27   necessary to litigate an appeal. *Id.*, Ex. A.  In pertinent part, the Rules authorize the

28   following discovery procedures:

Gibson, Dunn &
Crutcher LLP

4

1
2
3
4
5
6
7
8
9
10

- The Rules provide for the disclosure and inspection of documents within the possession and control of the parties and permit, upon application to the Tax Court, production of documents from non-parties.
- The Rules provide for oral examination of a party, and, upon seeking leave of the Tax Court, the oral examination of non-parties.
- The Rules provide for and explicitly authorize the oral examination of witnesses outside of Canada.
- The Rules provide for the admissibility and use of evidence obtained during discovery at the trial in the appeal.

*Id.*

The instant case has followed all of the regularized rules and procedures for a matter before the Tax Court. *Id.*, ¶ 5. The Minister of Revenue examined Mr. Sackman's tax return filed for the 2000 taxation year and reassessed the amount of tax owed by Mr. Sackman. *Id.* Mr. Sackman was notified of this change by Notice of Reassessment, and Mr. Sackman filed an Objection to the reassessment on July 26, 2002. *Id.*

On December 16, 2002, Mr. Sackman timely appealed the decision of the Minister of Revenue. *Id.*, ¶ 6. Mr. Sackman filed an Amended Notice of Appeal on May 10, 2007. *Id.* The Crown initially responded to Mr. Sackman's Notice of Appeal on March 24, 2003, and later filed an Amended Reply to the Amended Notice of Appeal on June 23, 2010. *Id.*, ¶ 7.

**C.    The *Sackman* Case**

The gravamen of the *Sackman* Case is a program involving the purchase and donation of works of art for the purpose of obtaining tax donation credits. *Id.*, ¶¶ 8-9; Ex. C, at ¶ 11. Artistic, a Canadian company, marketed an art donation program (the "Artistic Program") in Canada. *Id.*, Ex. C, at ¶ 11; Ex. D at Tab 2-B. In this program, Artistic offered that, for an investment of $3,500, participants would receive a donation receipt in the amount of $10,000. *Id.*, Ex. D at Tab 2-A. The artwork that was donated

1  was actually donated on behalf of Mr. Sackman by Artistic, which obtained the

2  artwork on his behalf from two entities known as Coleman Fine Arts ("Coleman") and

3  Silver Fine Arts ("Silver"). *Id.*, Ex. C, at ¶ 11; Ex. E.  Coleman and Silver are both

4  owned by Mr. Sloan. *Id.*, Ex. C, at ¶ 11; Ex. E.  Mr. Sloan, through Coleman and

5  Silver, had a financial arrangement with Artistic in which Mr. Sloan would pay Artistic

6  a 50% commission on any artwork sold by Artistic. *Id.*, Ex. D at Tab 2-B.

7        In 1998, 1999 and 2000, Mr. Sackman participated in the Artistic Program, and

8  used tax donation credits to reduce his tax liability. *Id.*, Ex. C, at ¶ 11.  Mr. Sackman

9  claims that the artwork he bought and donated in 2000 had a value of $647,232. *Id.*

10  The Crown's position is that the value of the artwork did not exceed $175,000, the

11  price paid by Mr. Sackman to acquire the artwork. *Id.*  The issue in the *Sackman* Case

12  is the fair market value of artwork Mr. Sackman obtained from Mr. Sloan's entities

13  through Artistic. *Id.*, ¶ 8; Ex. C, at ¶ 12; Ex. E.

14  **D.   Mr. Sloan Has Material and Key Evidence**

15        The Crown's position is that one of the factors that must be considered in

16  determining the fair market value of donated artwork is the circumstances leading to

17  the donation. *Id.*, ¶ 9.  This includes both the origins of the art donation program, as

18  well as the acquisition cost of the artwork to the promoters of the donation program.

19  *Id.*  As the owner of Coleman and Silver, Mr. Sloan has first-hand, personal knowledge

20  regarding Coleman's and Silver's participation in the Artistic Program. *Id.*  For

21  example, Mr. Sloan has information regarding the price Coleman and Silver paid to

22  acquire the artwork eventually used as part of the Artistic Program. *Id.*  Indeed, Mr.

23  Sloan is the only person with this relevant knowledge.

24        Accordingly, Mr. Sloan's testimony is necessary and critical for the *Sackman*

25  Case because the Crown's position is that it will establish the cost of the prints donated

26  in the Artistic Program, as well as information regarding the nature of the Artistic

27  Program. *Id.*, at Ex. E.

28

Gibson, Dunn &
Crutcher LLP

E. **The Crown's Attempts to Obtain the Necessary Evidence Have Been Unsuccessful**

The Crown has made numerous attempts to obtain evidence regarding the acquisition costs for the artwork and the role of Mr. Sloan and others in the Artistic Program directly from Mr. Sackman. *Id.*, Ex. D, ¶ 10; Ex. D, at Tab 2, ¶ 19; Ex. D at Tabs 2-G, 2-I, 2-J, 2-O, 2-P, 2-Q & 2-R. Mr. Sackman, however, has rebuffed the Crown's efforts. *Id.*, Ex. D at Tabs 2-G, 2-I, 2-J, 2-O & 2-P. As a result, the Crown attempted to obtain the necessary evidence directly from Mr. Sloan. *Id.*, ¶ 10; Ex. D at Tab 2, ¶ 19; Ex. D at Tabs 2-Q & 2-R.

In August 2010, counsel for the Crown wrote Mr. Sloan inquiring whether Mr. Sloan would voluntarily appear as a witness for the Crown at the trial in the *Sackman Case. Id.*, Ex. D at Tab 2-Q. In a telephone conference between counsel for the Crown and Mr. Sloan, Mr. Sloan stated that he would not voluntarily attend a hearing in Canada. *Id.*, Ex. D at Tab 2, ¶ 19.

In an email to Martin Beaudry dated November 27, 2012, Mr. Sloan indicated that he would accept service of a subpoena in order to attend a deposition. *Id.*, ¶ 14; Ex. G.

III. **SECTION 1782 ENTITLES THE CROWN TO TAKE DISCOVERY FROM MR. SLOAN**

A. **The Crown Satisfies the Statutory Requirements of Section 1782.**

Section 1782 authorizes federal district courts, "upon the application of any interested person," to order discovery of a "person [who] resides or is found" in the district "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); *In re Republic of Ecuador*, Case No. 10–80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sep.15, 2010). The Crown easily satisfies the three statutory prerequisites for discovery pursuant to 28 U.S.C. § 1782.

First, Mr. Sloan resides or may be found in this district. Publically available information confirms that Mr. Sloan "resides" or may be "found" in this district, as this

1  information indicates that Mr. Sloan lives in Woodland Hills, California.  Declaration

2  of Daniel L. Weiss ("Weiss Decl."), at Ex. B.  Counsel for the Crown has also sent

3  letters to Mr. Sloan at this same address located in Woodland Hills, California.

4  Beaudry Decl., Ex. D at Tabs 2-Q & 2-R.  Further, once the Court grants the Crown's

5  Application, the Crown intends to serve Mr. Sloan within the boundaries of this

6  district, providing an independent basis for satisfaction of the first element of Section

7  1782.  Weiss Decl., ¶ 4.

8          Second, the Crown intends to introduce the evidence obtained from Mr. Sloan in

9  a foreign proceeding. Beaudry Decl., ¶ 13.  The *Sackman* Case is before the Tax

10  Court, which adjudicates appeals under the Income Tax Act and thus constitutes a

11  foreign tribunal. *See In re Letters of Request to Examine Witnesses from Court of*

12  *Queen's Bench for Manitoba, Canada*, 59 F.R.D 625, 629 (N.D. Cal. 1973).  Further,

13  the Crown intends to use Mr. Sloan's evidence in the *Sackman* Case, as one of the key

14  issues in the case according to Crown is defining the applicable market to determine

15  the fair market value of the donated artwork. Beaudry Decl., ¶¶ 8, 9, 13.  The Crown

16  intends to use the expected testimony from Mr. Sloan to demonstrate that before

17  Artistic created the donation market, there was no discernible market for the donated

18  artwork. *Id.*, Ex. E. The Crown also intends to use Mr. Sloan's testimony to establish

19  that Mr. Sloan acquired the donated artwork at a cost significantly less than the fair

20  market price claimed by Mr. Sackman in his tax filings. *Id.*

21          Third, as the respondent in the *Sackman* Case, the Crown is an interested party.

22  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) (a litigant

23  in a foreign proceeding "may be the most common example of the 'interested

24  person[s]' who may invoke § 1782").

25          Accordingly, the Crown satisfies the statutory prerequisites set forth in Section

26  1782.

27

28

1  **B.    The Intel Discretionary Factors Favor Granting the Crown's Application.**

2  Where, as here, the Application meets the statutory requirements, the Supreme

3  Court has directed that a court consider four factors to determine whether to exercise

4  its discretion to grant a Section 1782 application: (1) whether the person from whom

5  discovery is sought is a participant (*i.e.*, a party) in the foreign proceeding; (2) the

6  receptivity of the foreign tribunal to federal court assistance; (3) whether the request

7  conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether

8  the request is unduly intrusive or burdensome. *See, e.g., Intel*, 542 U.S. at 264-65; *In*

9  *re Premises Located at 840 140th Avenue, N.E., Bellevue, Wash.*, 634 F.3d 557, 563

10 (9th Cir. 2011). Further, these factors must be considered in light of the two goals of

11 Section 1782: providing efficient assistance to participants in a foreign proceeding and

12 encouraging foreign courts to provide similar assistance to United States courts.

13 *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004). As

14 detailed below, each factor weighs strongly in favor of granting the Crown's requested

15 discovery.

16 *First*, Mr. Sloan is neither a party nor a participant in the *Sackman* Case. *See*

17 *Intel*, 542 U.S. at 264; *In re Roz Trading Ltd.*, Case No. 1:06-cv-02305-WSD, 2007

18 U.S. Dist. LEXIS 2112, at *6 (N.D. Ga. Jan. 11, 2007) ("Respondent is not a party to

19 the arbitration, and on this ground alone the first Intel factor is satisfied.") Further, Mr.

20 Sloan resides or can otherwise be found in Los Angeles, California, outside of the

21 jurisdiction of the Tax Court. Weiss Decl., Ex. B; Beaudry Decl., Ex. D at Tabs 2-Q &

22 2-R. Thus, this is not a situation where "[the] foreign tribunal has jurisdiction over

23 those appearing before it, and can order them to produce evidence." *Intel*, 542 U.S. at

24 264.

25 *Second*, the Tax Court is receptive to assistance from this Court. Indeed, the

26 Tax Court has issued the Letter of Request. Beaudry Decl., Ex. F; *In re Futurecorp*

27 *Intern. Pty Ltd.*, Case No. C12-80267 MISC CRB (LB), 2012 WL 5818288, at *3

28 (N.D. Cal. Nov. 15, 2012).

Gibson, Dunn &
Crutcher LLP

1     *Third*, the Crown's Application is not an attempt to avoid foreign evidence
2  gathering restrictions. Critically, the Rules provide for a specific procedure for
3  conducting examinations of witnesses outside of Canada. Beaudry Decl., Ex. A at
4  §§ 112, 119-122; Ex. E. Further, the Crown made a motion pursuant to the Rules for
5  the Tax Court to issue a commission, and the Tax Court granted the Crown's request.
6  *Id.*, Exs. D & E. Thus, the Tax Court has approved and authorized the Crown's
7  request for a deposition of Mr. Sloan. Simply put, the Crown's request for the
8  deposition of Mr. Sloan is a good-faith effort to obtain probative evidence for use in
9  the *Sackman* Case and is not an effort to avoid any evidence gathering rules.

10     *Fourth*, the Crown's Application is not unduly intrusive or burdensome. The
11  Crown is simply requesting a deposition of Mr. Sloan, a nonintrusive or burdensome
12  discovery technique. The Tax Court has explicitly found that the evidence the Crown
13  seeks from Mr. Sloan is relevant to the *Sackman* Case. *Id.*, Ex. E. In fact, after full
14  briefing regarding whether to issue a commission and letter of request for the
15  deposition of Mr. Sloan, the Tax Court explicitly found that there is "no doubt" that the
16  evidence the Crown seeks from Mr. Sloan is relevant to the *Sackman* Case. *Id.*
17  Further, the Crown sought to obtain the desired evidence from Mr. Sackman and has
18  asked Mr. Sloan to voluntarily appear at the trial in the *Sackman* Case. Its efforts to
19  obtain the required evidence without a deposition of Mr. Sloan were unsuccessful. *Id.*,
20  Ex. D, ¶ 10; Ex. D, at Tab 2, ¶ 19; Ex. D at Tabs 2-G, 2-I, 2-J, 2-O, 2-P; 2-Q & 2-R.

21     Therefore, all of the discretionary factors weigh in favor of granting the Crown's
22  application.

23  **C.    The Crown's Filing of This Application *Ex Parte* and Without Prior Notice to Mr. Sloan is Warranted by the Interests of Justice.**

24     Applications for discovery pursuant to 28 U.S.C. § 1782 may be granted without
25  first giving notice to the party from whom discovery is sought. *See Republic of*
26  *Ecuador,* 2010 WL 3702427, at *2-3. In fact, "it is common for 'the process of
27  presenting the request to a court and to obtain the order authorizing discovery' to be
28

1  conducted *ex parte.*" *Id.* at \*2 *(quoting In re Letter of Request from Supreme Court,*

2  138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991)). "Such ex parte applications are typically

3  justified by the fact that the parties will be given adequate notice of any discovery

4  taken pursuant to the request and will then have the opportunity to move to quash the

5  discovery or to participate in it." *Id.* (citing *In re Letters Rogatory from Tokyo Dist.,*

6  539 F.2d 1216, 1219 (9th Cir. 1976)).

7        Further, issuing the Subpoena without notice will not prejudice Mr. Sloan.  To

8  the extent that Mr. Sloan seeks to challenge the Subpoena, he will have sufficient time

9  to retain counsel and move to quash or to seek a protective order.  This puts Mr. Sloan

10  on equal footing with any person found in this district who is subject to the routine

11  application of this Court's subpoena power.

12        Accordingly, the Court should grant the Crown's *ex parte* application for

13  issuance of the Subpoena pursuant to Section 1782.

14                     **IV.   CONCLUSION**

15        For the foregoing reasons, the Crown respectfully requests that this Court grant

16  this Application for the issuance of the Subpoena to Mr. Sloan under Section 1782.

17

18

19  Dated:  April 19, 2013              Respectfully submitted,

20                                      GIBSON, DUNN & CRUTCHER LLP

21

22

23                                      By: _____
                                            Maurice Suh

24

25                                      Attorneys for Applicant,
                                        Her Majesty The Queen

26  101479637.2

27

28

Gibson, Dunn &
Crutcher LLP