**THIS IS EXHIBIT "F"**
referred to in the affidavit of
Laura Alescio
This 30ᵗʰ day of September, 2011

_____
**Commissioner for Taking Affidavits**

84

# Ro Gallery Image Makers, inc.

**The Source For Select Artworks**

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

## INVOICE
**Date:  11/10/1999**

**Sold To:**
Nesconset, NY 11767

**Ship To:**

Delray Beach FL 33484

| Order #:99-508 | Terms: | Paid Ck | | Shipped Via: | UPS – 2 day insured | |
|---|---|---|---|---|---|---|
| **Artist** | **Quantity** | **Description** | | | **Cost\*** | **Amount** |
| Picasso (estate) | 1 | Le Peintre et son modele<br>Ap 34 | | | $2700.00 | $2,700.00 |

*Prices Subject to Change Without Notice.*

| | |
|---|---|
| **Sub Total:** | $2,700.00 |
| **Packing, Handling, Shipping & Insurance:** | $35.00 |
| **Sales Tax :** | Ship to FL |
| **Total Invoice:** | $2,735.00 |

**Comments:**

# Ro Gallery Image Makers, inc.

**The Source For Select Artworks**

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

## INVOICE
**Date: 1/26/00**

**Sold To:**

St. Pete Beach, FL 33706

**Ship To:**

St. Pete Beach, FL 33706

85

| Order #:00-501 | Terms: | Paid by check | Shipped Via: | | UPS 2 day insured |
|---|---|---|---|---|---|
| Artist | Quantity | Description | | Cost* | Amount |
| Picasso (estate) | 1 | Femme au Fauteuil Rouge 489/500 | | $2780.00 | $2,780.00 |

*Prices Subject to Change Without Notice.*

|  |  |
|---|---|
| Sub Total: | $2,780.00 |
| Packing, Handling, Shipping & Insurance: | $35.00 |
| Sales Tax : | Ship to FL |
| Total Invoice: | $2,815.00 |

**Comments:**

86



**Image Makers, Inc.**

The Source For Select Artworks

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date:  2/15/00

Sold To:

3550 Galt Ocean Drive
Ft. Lauderdale, FL 33308

Ship To:

3550 Galt Ocean Drive
Ft. Lauderdale, FL 33308

| Order #:00-309 | Terms: Paid MC | | Shipped Via: | | UPS - insured |
|---|---|---|---|---|---|
| Artist | Quantity | Description | | Cost* | Amount |
| Picasso (estate) | 1 | "Deux Enfants Claude et Paloma" 19A     101/500  Certificate enclosed | | $4500.00 | $4,500.00 |

|  |  |
|---|---|
| Sub Total: | $4,500.00 |
| Packing, Handling, Shipping & Insurance: | $55.00 |
| Sales Tax : | Ship to FL |
| Total Invoice: | $4,555.00 |

*Prices Subject to Change Without Notice.

Comments:



**Ro**_allery_
*Image Makers, Inc.*
The Source For Select Artworks

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date:  11-30-2000

Sold To:

Tokyo, JAPAN 113-0031

Ship To:

Bunkyo
Tokyo, JAPAN 113-0031

**87**

00r6 3o11

| Terms: Paid American Express | | Shipped Via: | | Customer fed ex | |
|---|---|---|---|---|---|
| Artist | Quantity | Description | Cost* | | Amount |
| MIRO, Joan | 1 | "Le Mirror de l'homme par les betes" HC | $8500.00 | | $8,500.00 |
| Picasso(estate) | 1 | Femme Assise  AP 22 | $2800.00 | | $2800.00 |
| Hall, Susan | 1 | Pencils  AP (etching/aquatint) | $2500.00 | | $2500.00 |
| | | ~ *title not listed* | | | |
| | | *all others @ $1400* | | | |

| | |
|---|---|
| *Prices Subject to Change Without Notice.* | Sub Total: $13,800.00 |
| Packing, Handling, Shipping & Insurance: | CUST FX |
| Comments:                        Sales Tax : | Ship to Japan |
| Total Invoice: | $13,800.00 |

# Ro Gallery Image Makers, inc.

The Source For Select Artworks

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date: 12/18/1999

Sold To:
Chattanooga, TN 37421

Ship To:
Chattanooga, TN 37421

**88**

992512

| | Terms: | Paid MC | | Shipped Via: | | UPS- 2 day insured |
|---|---|---|---|---|---|---|
| Artist | Quantity | Description | | | Cost* | Amount |
| PICASSO (Estate) | 1 | J-28 "Tete de Femme en gris et rouge sur fond Ocre   217/500 | | | $2500.00 | $2,500.00 |
| MIRO | 1 | 6/50 lithograph | | | $6000.00 | $6,000.00 |
| Lombardi, G. | 1 | Gathering Cane   800·900 | | | $1250.00 | $1250.00 |
| Max, P. | 1 | Liberty (mixed media on paper) | | | $3700.00 | $3700.00 |
| Fiorvanti | 1 | Cottage in winter   900 | | | $1400.00 | $1400.00 |
| *Prices Subject to Change Without Notice. | | | | | Sub Total: | $14,850.00 |

Packing, Handling, Shipping & Insurance: No Charge
Sales Tax : Ship to TN
Total Invoice: $14,850.00

Comments:



**The Source For Select Artworks**

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date:  11/28/00]

Sold To:

DR. RANDALL SWANLUND

Ship To:

DR. RANDALL SWANLUND

89

| Order 00r30981 | Terms: | Paid Visa* | | Shipped Via: | | Airborne – 2 day ins | |
|---|---|---|---|---|---|---|---|
| Artist | Quantity | Description | | | | Cost* | Amount |
| Pablo PICASSO | 1 | Femme a la Robe Multicolore  AP 12 | | | | $2950.00 | $2,950.00 |
| (estate) | 1 | Femme Assise d'une Fenetre     118/500 | | | | $2500.00 | $2,500.00 |
| | | | | | | | |
| | | Certificates of Authenticity enclosed | | | | | |

*Prices Subject to Change Without Notice.*

| | |
|---|---|
| Sub Total: | $5,450.00 |
| Packing, Handling, Shipping & Insurance: | $15.00 |
| Sales Tax : | Ship to WA |
| Total Invoice: | $5,465.00 |

Comments:  Thank you for your order.

90

# Ro Gallery Image Makers, inc.

**The Source For Select Artworks**

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com

## INVOICE
### Date:  3/10/2000

**Sold To:**

North Kingston, RI 02852

**Ship To:**

North Kingston, RI 02852

| Orde4:Exp2050 | Terms: | Paid check # 1897 | Shipped Via: | | UPS OVERNIGHT |
|---|---|---|---|---|---|
| **Artist** | **Quantity** | **Description** | | **Cost*** | **Amount** |
| Picasso Pablo | 1 | "L'entriente", bloch number 1111 Original Etching     21/50 framed | | $16,500.00 | $16,500.00 |
| Picasso (Estate) | 1 | #24-1 "Femme au Fauteuil Rouge" 492/500 | | $3000.00 | $3,000.00 |
| | | Certificates enclosed | | | |

| | | |
|---|---|---|
| *Prices Subject to Change Without Notice.* | **Sub Total:** | $19,500.00 |
| | **Packing, Handling, Shipping & Insurance:** | $140.00 |
| **Comments:** | **Sales Tax :** | Ship to RI |
| | **Total Invoice:** | **$19,640.00** |

91

# Ro Gallery Image Makers, inc.

The Source For Select Artworks

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date: **10/11/1999**

**Sold To:**

Winnepeg, Manatoba,
CANADA R3L 1R1

**Ship To:**

Winnepeg, Manatoba,
CANADA R3L 1R1

| Order:99e5777 | Terms: | Paid AmEx* | Shipped Via: | | Fed Ex Intl |
|---|---|---|---|---|---|
| **Artist** | **Quantity** | **Description** | | **Cost*** | **Amount** |
| Picasso, P. (estate) | 2 | Nature Morte au Gueridon et a l'Assette Reference #11-B 47/500 Fillette au Bateau Reference: # 4-B Ap 16 | | $2500.00 | $5,000.00 |

*Prices Subject to Change Without Notice.*

**Comments:** Thank you for your order.

| | |
|---|---|
| **Sub Total:** | $5,000.00 |
| **Packing, Handling, Shipping & Insurance:** | $75.00 |
| **Sales Tax :** | Ship to CAN |
| **Total Invoice:** | **$5,075.00** |

92

# Ro Gallery Image Makers, inc.

**The Source For Select Artworks**

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 ● 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
**Date:  3/16/2000**

**Sold To:**

Houston, TX 77219

**Ship To:**

Houston TX  77004

| Order:00-7650 | Terms: | consignment | Shipped Via: | UPS – 2 day insured | |
|---|---|---|---|---|---|
| **Artist** | **Quantity** | **Description** | | **Cost\*** | **Amount** |
| Picasso (estate) | 1 | "Femme au Beret"  #23-10 185/500 Limited edition re-creation of an oil on Canvas by Picasso created in 1939. Year of publication:  1981 Lithograph in colors on Arches Paper. Approved by the Heirs of PICASSO. | | $3000.00 | $3,000.00 |
| *\*Prices Subject to Change Without Notice.* | | | | **Sub Total:** | $3000.00 |
| | | | Packing, Handling, Shipping & Insurance: | | $50.00 |
| **Comments:** | | | | **Sales Tax :** | Ship to TX |
| | | | | **Total Invoice:** | $3,050.00 |



**Ro**
**Gallery**
**Image Makers, inc.**

The Source For Select Artworks

47-15 36th Street
Long Island City, New York 1110
Tel: 718 937-0901 ● 212 732-681
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date: 1/5/00

Sold To:

Cleveland, OH 44113

Ship To:

Cleveland, OH 44113

**93**

| Order #:001001 | Terms: COD | | Shipped Via: | | UPS – 2 DAY INS | |
|---|---|---|---|---|---|---|
| Artist | Quantity | Description | | | Cost* | Amount |
| Picasso (estate) | 3 | 11B: 1/500<br>26D: 484/500<br>23-8: 321/500 | | | $3000.00 | $9,000.00 |
| | 1 | Discount | | | -$150.00 | ($ 150.00 |

*Prices Subject to Change Without Notice.

| | | |
|---|---|---|
| **Sub Total:** | $8,850.00 |
| **Packing, Handling, Shipping & Insurance:** | $55.00 |
| **Sales Tax :** | Ship to OH |
| **Total Invoice:** | $8,905.00 |

Comments:

**94**

# Ro
# Gallery
# Image Makers, inc.

**The Source For Select Artworks**

47-15 36th Stree
Long Island City, New York 1110
Tel: 718 937-0901 ● 212 732-688
Fax: 718 937-120
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
**Date:  3/6/1999**

**Sold To:**

799 Park Avenue
New York, NY 10021

**Ship To:**

799 Park Avenue
New York, NY 10021

| Order:EXPO99 | Terms: | Paid AM EX | Shipped Via: | | Direc |
|---|---|---|---|---|---|
| **Artist** | **Quantity** | **Description** | | **Cost\*** | **Amount** |
| Picasso (estate) | 1 | Visage de Femme sur Fond Raye AP 18 | | $3000.00 | $3,000.00 |

*Prices Subject to Change Without Notice.*

| | |
|---|---|
| **Sub Total:** | $3,000.00 |
| **Packing, Handling, Shipping & Insurance:** | No Charge |
| **Sales Tax :** | |
| **Total Invoice:** | **$3,000.00** |

**Comments:**

**95**

# R O *gallery*
### *Image Makers, Inc.*
#### The Source For Select Artworks

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

### INVOICE
#### Date:  8/15/98

**Sold To:**

Brookline, MA 02146

**Ship To:**

Brookline, MA 02146

| Order:00-8761 | Terms: | Paid check | Shipped Via: | | UPS |
|---|---|---|---|---|---|
| **Artist** | **Quantity** | **Description** | | **Cost*** | **Amount** |
| Picasso (estate) | 1 | Le Peintre et son modele" 26-9 Framed. 4/500 | | $5000.00 | $5,000.00 |

| *Prices Subject to Change Without Notice.* | | | **Sub Total:** | $5,000.00 |
|---|---|---|---|---|
| | | | **Packing, Handling, Shipping & Insurance:** | $55.00 |
| **Comments:** | | | **Sales Tax :** | Ship to MA |
| | | | **Total Invoice:** | **$5,055.00** |

12/09/2001  07:30   7189371206                    ROGALLERY                    PAGE  02

# RGallery.com

The Source For Select Artworks

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 • 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date:  11/19/2001

**Ship To:**

**Sold To:**
Oakland, CA 94609

same

96

|              |          | Shipped Via: |  UPS - insured |              |
|--------------|----------|--------------|----------------|--------------|
| **Order:0113444** | **Terms:** Upon presentation | | | |
| **Artist**   | **Quantity** | **Description** | **Cost\*** | **Amount** |
| Picasso (estate) | 1 | "Cavalier en Armure" AP 4 | $2850.00 | $2,850.00 |
|              |          | Certificate of Authenticity enclosed. | | |

|  |  |
|---|---|
| Sub Total: | $2,850.00 |
| Packing, Handling, Shipping & Insurance: | $35.00 |
| Sales Tax: | Ships to CA |
| Total Invoice: | $2,885.00 |

*Prices Subject to Change Without Notice.*

**Comments:  Thank you for your order.**



**The Source For Select Artworks**

47-15 36th Street
Long Island City, New York 11101
Tel: 718 937-0901 ● 212 732-6887
Fax: 718 937-1206
e-mail: art@rogallery.com
web address: www.rogallery.com

**INVOICE**
Date:  3/30/2000

**Sold To:**

Ithaca, NY 14850

**Ship To:**

Ithaca, NY 14850

**97**

| Order:00-5011 | Terms: | Upon Presentation | Shipped Via: | | UPS – 2 day |
|---|---|---|---|---|---|
| Artist | Quantity | Description | | Cost* | Amount |
| Picasso (estate) | 2 | 12-E – "Les Repas Des Enfants" 214/500 1-B -- "Fillette Couronee au Bateau" 436/500 | | 2500.00 | $5,000.00 |
| | | | | | |

*Prices Subject to Change Without Notice.

Comments:

| | |
|---|---|
| Sub Total: | $5,000.00 |
| Packing, Handling, Shipping & Insurance: | $50.00 |
| Sales Tax : | |
| Total Invoice: | $5,050.00 |

**G**

**THIS IS EXHIBIT "G"**
**referred to in the affidavit of**
**Laura Alescio**
This <u>30th</u> day of September, 2011

_____
**Commissioner for Taking Affidavits**

MHFeltman Verbatim Reporting

Jeffrey Sackman

1    to admit or make inquiries about how much Silver Fine Arts

2    or Paul Sloan was paying for the Charles Bragg prints that

3    were part of Artistic's art donation program?

4    **REF 86**          MR. TEPLITSKY:   No.

5    505.          BY MR. DERKSEN:   Q.   Are you prepared to

6    make inquiries and to provide, if available, copies of any

7    agreements between Charles Bragg and Silver Fine Arts?

8    **REF 87**          MR. TEPLITSKY:   No.

9    506.          BY MR. DERKSEN:   Q.   Do you have any

10   knowledge, Mr. Sackman, about what Artistic or Coleman Fine

11   Arts or Silver Fine Arts paid for the prints that you

12   bought and donated?

13                  A.   No.

14   507.          Q.   I take it, Mr. Teplitsky, the

15   Appellant is not prepared to admit the authenticity of this

16   document.

17                  MR. TEPLITSKY:   Is this another one you

18   got through the IRS?

19                  MR. DERKSEN:   That's my understanding.

20                  MR. TEPLITSKY:   And did you get anything

21   to indicate that any of this has anything to do with this

22   case?

23                  MR. DERKSEN:   Only the information that

24   I've received as part of the commission.

25                  MR. TEPLITSKY:   Did you produce that

MHFeltman Verbatim Reporting

Jeffrey Sackman

1    Bragg prints that you bought and donated in 2000?

2    **REF 84**         MR. TEPLITSKY:  No.  Did you get the

3    balance of this invoice?

4                       MR. DERKSEN:  I'm sorry.

5                       MR. TEPLITSKY:  You didn't get the

6    agreement, the Schedule A.

7                       MR. DERKSEN:  I'm not aware of the Crown

8    having a copy of it.  Off the record, please.

9    --- OFF THE RECORD

10   503.              BY MR. DERKSEN:  Q.  Turn over to Tab 40

11   of Exhibit 3.  This is a document that appears to be an

12   invoice from Charles Bragg, Asylum Studio, to Silver Fine

13   Arts, dated July 26, 2001, and it refers to 5,000 graphics,

14   assorted titles, $40 apiece, and total amount $200,000.

15   Are you prepared to make inquiries of Artistic Ideas or

16   Silver Fine Arts or Paul Sloan to confirm whether this is a

17   copy of an invoice concerning Charles Bragg prints that

18   were purchased and donated by Mr. Sackman in the 2000

19   taxation year?

20                      MR. TEPLITSKY:  Which of Mr. Sackman's

21   prints do you saying are included in this?

22                      MR. DERKSEN:  I'm asking you if you're

23   prepared to make those inquiries.

24   **REF 85**         MR. TEPLITSKY:  No.

25   504.              BY MR. DERKSEN:  Q.  And are you prepared

MHFeltman Verbatim Reporting

Jeffrey Sackman

1    IRS through a mutual assistance request.

2                    MR. TEPLITSKY:  I obviously can't agree to

3    that.

4    500.            BY MR. DERKSEN:  Q.  Are you prepared to

5    undertake to make inquiries to confirm whether Artistic

6    Ideas, Mr. Sackman's agent, received a copy of this invoice

7    and advise as to its understanding of what this document

8    relates to?

9                    MR. TEPLITSKY:  Artistic Ideas is not even

10   a party to the listed agreement.

11                   MR. DERKSEN:  It certainly indicates that

12   it is receiving something pursuant to this invoice.

13   REF 82          MR. TEPLITSKY:  The goods referenced, I

14   take it, are being shipped, according to this agreement, to

15   Artistic.  It's not a contracting party.  The contracting

16   parties are identified as Silver Fine Arts and Charles Lynn

17   Bragg.  So, no.

18   501.            BY MR. DERKSEN:  Q.  I apologize if I'm

19   repeating myself.  Are you prepared to make inquiries of

20   Artistic to determine whether they received a copy of this

21   document?

22   REF 83          MR. TEPLITSKY:  No.

23   502.            BY MR. DERKSEN:  Q.  Are you prepared to

24   make inquiries to confirm the cost to Coleman or Silver

25   Fine Arts or Paul Sloan with respect to the Charles Lynn

1    that Coleman Fine Arts was paying $40 per print with

2    respect to the Charles Lynn Bragg prints that he bought and

3    donated as part of the donations in 2000?

4                    MR. TEPLITSKY:  No.  This references a

5    transaction subsequent to 2000.

6    497.           BY MR. DERKSEN:  Q.  I'm going to suggest

7    to you that this concerns the subject properties for 2000.

8    Are you prepared to make inquiries of Artistic Ideas to

9    confirm whether this invoice concerns the Charles Lynn

10   Bragg prints that Mr. Sackman bought and donated through

11   Artistic's program in 2000?

12   REF 80         MR. TEPLITSKY:  No.

13   498.           BY MR. DERKSEN:  Q.  And are you prepared

14   to make inquiries and ask for copies of agreements, the

15   agreements that are referenced in the document?  This is

16   the agreement with Charles Lynn Bragg and Silver Fine Arts

17   dated September 21, 2000, and last updated May 24, 2000?

18   REF 81         MR. TEPLITSKY:  No,

19   499.           BY MR. DERKSEN:  Q.  Are you prepared to

20   admit the authenticity of this document, that it's a copy

21   of an invoice?

22                   MR. TEPLITSKY:  No, not unless you tell me

23   how you got it, then I might consider it.

24                   MR. DERKSEN:  It's my understanding that

25   this document was obtained through a request through the

МИ
MHFeltman Verbatim Reporting                                    Jeffrey Sackman

1    evidence, I have provided to you.

2                    MR. DERKSEN:  In the binder.

3                    MR. TEPLITSKY:  In the binder, yes.  I

4    don't have anything else other than what's disclosed in the

5    experts' reports or in what I've already given to you.

6    494.          BY MR. DERKSEN:  Q.  Do you know whether

7    Coleman Fine Arts, Silver Fine Arts, or Paul Sloan had any

8    affiliation or particular interest in the charities that

9    you donated to?

10                   MR. TEPLITSKY:  I have no knowledge of

11   that.

12   495.          BY MR. DERKSEN:  Q.  Are you prepared to

13   make those inquiries?

14   **REF 79**        MR. TEPLITSKY:  No.

15                   MR. DERKSEN:  Off the record, please.

16   --- OFF THE RECORD

17   496.          BY MR. DERKSEN:  Q.  If you would turn up

18   Exhibit 3, Binder 2 of the Respondent's second

19   supplementary documents, and I would ask you to turn up Tab

20   39, Mr. Sackman.  I would ask you to look at this document,

21   which appears to be an invoice.  It has at the top Charles

22   Lynn Bragg and it's dated, it appears, May 24, 2001, and

23   says ship to Artistic Ideas and bill to Coleman Fine Arts,

24   and it references some prints and shows a unit price of $40

25   and a quantity of 3,738.  Is Mr. Sackman prepared to admit

МГФ

MHFeltman Verbatim Reporting

Jeffrey Sackman

1    for 1998 and 1999.  To move matters along, I take it your

2    client would refuse to answer questions of that nature.

3    **REF 77**          MR. TEPLITSKY:  Yes.

4    490.          BY MR. DERKSEN:  Q.  With respect to 2000,

5    are you aware of any information as to how Coleman and

6    Silver Fine Arts obtained prints that were part of

7    Artistic's art donation program or the prints that you

8    purchased and acquired through Artistic Ideas?

9                    MR. TEPLITSKY:  We have no information.

10   491.          BY MR. DERKSEN:  Q.  Are you prepared to

11   make inquiries of Artistic Ideas with respect to that

12   matter?

13   **REF 78**          MR. TEPLITSKY:  No.

14   492.          BY MR. DERKSEN:  Q.  So you have no

15   information about the history of the prints that were

16   transacted in 2000.

17                   MR. TEPLITSKY:  Other than is contained in

18   our appraisal reports and will be in our expert reports.

19   493.          BY MR. DERKSEN:  Q.  Are you aware of

20   whether Coleman Fine Arts or Silver Fine Arts or Paul Sloan

21   sold any of the subject prints to other people that weren't

22   involved in the art donation program, Artistic's art

23   donation program?

24                   MR. TEPLITSKY:  The only specific evidence

25   of sales, retail sales or wholesale sales, specific

MHFeltman Verbatim Reporting                                                    Jeffrey Sackman

1   charities, including the Ontario Foundation.  What

2   information did Artistic provide the charities with respect

3   to the possible sale of the prints?

4   **REF 75**          MR. TEPLITSKY:  That's a refusal.

5   485.          BY MR. DERKSEN:  Q.  Were you aware, Mr.

6   Sackman, that Artistic may have advised charities, in

7   particular the Ontario Foundation, that the charities could

8   sell some of the prints?  Did you have any personal

9   knowledge of that?

10                  A.  No.

11  486.          Q.  You've never heard of that.

12                  A.  No.

13  487.          Q.  Do you know if Coleman Fine Arts or

14  Silver Fine Arts or an individual by the name of Paul Sloan

15  engaged anyone to go out and source or find prints for the

16  prints that were transacted as part of Artistic's art

17  donation program?

18                  MR. TEPLITSKY:  We don't.

19  488.          BY MR. DERKSEN:  Q.  Are you prepared to

20  make inquiries of Artistic Ideas and to advise with respect

21  to that?

22  **REF 76**          MR. TEPLITSKY:  No.

23  489.          BY MR. DERKSEN:  Q.  Do you know where

24  Coleman Fine Arts — Mr. Teplitsky, in fairness, I wanted to

25  ask some questions with respect to the source of the prints

**MHfeltman**

MHFeltman Verbatim Reporting

1          TAX COURT OF CANADA

2          IN RE:  The Income Tax Act

3    BETWEEN:                          2002-4824(IT)G

4                    **JEFFREY SACKMAN**

5                                        Appellant

6                      – and –

7

8              **HER MAJESTY THE QUEEN**

9                                        Respondent

10

11    This is the Examination for Discovery of **JEFFREY SACKMAN**,

12    the Appellant herein, held at the Offices of the Department

13    of Justice, 2 First Canadian Place, Exchange Tower, Suite

14    3400, Toronto, Ontario, on Monday, January 15, 2007.

15                    **VOLUME II**

16

17    APPEARANCES:

18    Martin Teplitsky, Q.C.              for the Appellant

19    Perry Derksen, Esq.)                for the Respondent

20    Jenna Clark          )

21

22

23              MHFeltman Verbatim Reporting

24    375 Merton Street, #302   Toronto, Ontario  M4S 1B4

25              Per:  Holly Feltman, C.V.R.

**H**

**THIS IS EXHIBIT "H"**
**referred to in the affidavit of**
**Laura Alescio**
This <u>30th</u> day of September, 2011

**Commissioner for Taking Affidavits**

*Case Name:*
## Sackman v. Canada

**Between**
**Her Majesty the Queen, Appellant, and**
**Jeffrey Sackman and Artistic Ideas Inc., Respondents**

[2008] F.C.J. No. 726

2008 FCA 177

2008 D.T.C. 6407

[2008] 4 C.T.C. 99

167 A.C.W.S. (3d) 64

378 N.R. 192

Docket A-378-07

Federal Court of Appeal
Toronto, Ontario

**Linden, Noël and Ryer JJ.A.**

Heard: May 6, 2008.
Judgment: May 8, 2008.

(23 paras.)

*Civil litigation -- Civil procedure -- Discovery -- Examination for discovery -- Persons who may be examined -- Non-parties -- Range of examination -- Relevancy -- Appeal by Crown from dismissal of its motion for permission to examine for discovery a representative of a third party pursuant to s. 99 of Tax Court of Canada Rules -- Originally Crown had sought to ask 86 questions, but on appeal limited their request to six -- Appeal allowed -- Questions now proposed by Crown were relevant to the determination of the market in which the artwork was sold for the purpose of determining its fair market value -- This constituted information not possessed by Crown, and was not unfair to either respondent or third party.*

Appeal by the Crown from dismissal of its motion for permission to examine for discovery a representative of a third party, Artistic, pursuant to s. 99 of the Tax Court of Canada Rules (General Procedure). The motion sought leave to examine a knowledgeable nominee of Artistic on a wide variety of questions, 86 in total, which related to the art donation program through which Sackman purchased art and made the charitable donations that were in issue in the main appeal. On appeal, the Crown proposed to limit the scope of the examination which it wished to conduct to a single issue, which

reduced the number of questions which it sought to explore from 86 to six.

HELD: Appeal allowed with reference to the 6 questions proposed by the Crown. The six questions now proposed by the Crown were relevant to the determination of the market in which the artwork was sold for the purpose of determining its fair market value. This constituted information not possessed by the Crown, and was not unfair to either Sackman or Artistic.

## Statutes, Regulations and Rules Cited:

Tax Court of Canada Rules (General Procedure), SOR/90-688, s. 99(1)

Appeal From: Appeal from an order of Bowman C.J. of Tax Court of Canada dated August 17, 2007, and substituted by amended order dated August 27, 2007, in Tax Court File No. 2002-4824(IT)G).

## Counsel:

Perry Derksen and Martin Beaudry, for the Appellant.

Martin Teplitsky and Matthew Sokolsky, for the Respondent (Jeffrey Sackman).

Irving Marks and Shawn L. Pulver, for the Respondent (Artistic Ideas Inc.).

The judgment of the Court was delivered by

1    NOËL J.A.:-- This is an appeal from a decision of Bowman C.J., which, *inter alia*, dismissed the Crown's motion for permission to examine for discovery a representative of a third party, Artistic Ideas Inc. ("Artistic"), pursuant to section 99 of the *Tax Court of Canada Rules (General Procedure)* SOR/90-688, as amended (the "Tax Court Rules"). The motion sought leave to examine a knowledgeable nominee of Artistic on a wide variety of questions -- 86 in total -- having to do with the art donation program through which the respondent, Jeffrey Sackman, purchased art and made the charitable donations that are in issue in the main appeal.

2    In challenging Bowman C.J.'s refusal to grant leave, the Crown has departed significantly from the motion as it was originally presented. It now proposes to limit the scope of the examination which it wishes to conduct to a single issue, thereby reducing the number of questions which it seeks to explore from 86 to 6.

## RELEVANT FACTS

3    Artistic ran an art donation program whereby individual taxpayers, described as "investors" would purchase prints in bulk for a low price. Commencing in 1998, Artistic offered these investors groups of 11 prints, appraised at a value of at least $1000, for $3,500. The investors would then donate 10 of the 11 prints and receive a tax receipt of $10,000. Using the Ontario and federal tax rates, each investor was said to achieve tax savings of $5,029 on a $3,500 investment. Through its program, Artistic acted as agent for the investors in acquiring the prints from one of two vendors -- Coleman Fine Arts Inc. and later in 2000, Silver Fine Arts Ltd - and finding one or more charities to accept donations and issue charitable receipts.

4    Jeffrey Sackman bought several groups of prints and donated a total of 447 prints in 2000 through

Artistic's art donation program. For the 2000 taxation year, he reported total charitable gifts of $802,031 and claimed the corresponding tax credit (Appellant's Memorandum, para. 7).

**5**   The Minister of National Revenue (the "Minister") reassessed Mr. Sackman for the 2000 taxation year on the basis that the fair market value of the prints donated could not exceed the amount he paid for them. As Mr. Sackman produced no evidence of payment, the Minister assumed that the cost of the prints, and consequently their fair market value, was nil. The Minister nevertheless conceded that the prints must have had some value. Mr. Sackman appealed this reassessment and the main issue before the Tax Court in the appeal (the "Sackman Appeal") concerns the fair market value of the donated prints. Artistic, although it appears as a respondent in the present appeal, is not a party to the Sackman Appeal. [Artistic is currently awaiting a decision of the Tax Court on an appeal from a notice of assessment for Goods and Services Tax (the "G.S.T. appeal"). As part of the G.S.T. appeal, a representative of Artistic, Mark Pearlman, was examined and cross-examined for discovery.]

**6**   This Court has twice considered similar appeals involving the fair market value of prints purchased and donated by taxpayers through promoters such as Artistic (see *Klotz v. Canada*, [2004] T.C.J. No. 52, 2004 TCC 147, aff'd in *Klotz v. Canada*, [2005] F.C.J. No. 754, 2005 FCA 158 ("*Klotz*") and *Nash v. Canada*, [2005] F.C.J. No. 1921, 2005 FCA 386 ("*Nash*")). In both cases, the determination of the fair market value for the prints was based on evidence establishing the volume and details of the transactions by the promoters.

**7**   In August of 2004, several years prior to the commencement of the examinations for discovery in the Sackman Appeal, the Crown formally requested information and documents from Artistic. Artistic advised that the request was inappropriate and refused to respond (Tringali Affidavit, No.2, paras. 18-20 and Exhibits "B", "C" and "D" thereto, Appeal Book, Vol. I. Tab 6, p.77).

**8**   During the examination for discovery of Mr. Sackman, the Crown asked for information concerning Artistic's art donation program, including whether Mr. Sackman would undertake to make inquiries of Artistic about the prints sold and donated through the program. Some of the questions were directed at establishing the volume and details of the transactions in the Artistic's art donation program in order to determine the market created by the donation program and the fair market value of the prints. Mr. Sackman refused to make the requested undertakings. He also refused to admit the accuracy of certain facts contained in a report (the "Navigant Report") prepared for the Crown regarding certain of the transactions in Artistic's art donation program.

**9**   Subsequently, on February 13, 2007, the Crown wrote to Artistic's counsel and again requested the information and documents. A list of 86 questions subdivided under a number of topics was attached as Schedule A to the letter (Exhibit "G" of Tringali Affidavit No.2, Appeal Book, Vol.1, Tab 6(g), p. 160). The Crown also asked whether Artistic would consent to an order for third-party discovery. Artistic refused to answer the Crown's questions or consent to an order for third-party discovery.

**10**   In light of Mr. Sackman's refusal to make inquiries and Artistic's refusal to informally provide information and documents, the Crown brought a motion under rule 99 of the *Tax Court Rules*, for leave to examine Artistic for discovery as a non-party through a knowledgeable nominee with respect to the 86 questions which Artistic had refused to respond to (the questions are set out at Appendix A of the decision under review). Rule 99 provides:

> **99.** (1) The Court may grant leave, on such terms respecting costs and other matters as are just, to examine for discovery any person who there is reason to believe has information relevant to a material issue in the appeal, other than an expert engaged by or on behalf of a party in preparation for contemplated or pending litigation.

(2)   Leave under subsection (1) shall not be granted unless the Court is satisfied that,

    (*a*) the moving party has been unable to obtain the information from other persons whom the moving party is entitled to examine for discovery, or from the person sought to be examined,

    (*b*) it would be unfair to require the moving party to proceed to hearing without having the opportunity of examining the person, and

    (*c*) the examination will not,

    (i)    unduly delay the commencement of the hearing of the proceeding,
    (ii)   entail unreasonable expense for other parties, or
    (iii)  result in unfairness to the person the moving party seeks to examine.

(3)   A party who examines a person orally under this section shall, if requested, serve any party who attended or was represented on the examination with the transcript free of charge, unless the Court directs otherwise.

(4)   The examining party is not entitled to recover the costs of the examination from another party unless the Court expressly directs otherwise.

(5)   The evidence of a person examined under this section may not be read into evidence at the hearing under subsection 100(1).

* * *

99. (1) La Cour peut accorder, à des conditions appropriées, notamment quant aux dépens l'autorisation d'interroger au préalable une personne, à l'exception d'un expert engagé en prévision d'un litige ou en instance par une partie, ou en son nom, si elle a des raisons de croire que cette personne possède des renseignements pertinents sur une question importante en litige.

(2)   La Cour n'accorde l'autorisation selon le paragraphe (1) que si elle est convaincue :

    *a*) que le requérant n'a pas été en mesure d'obtenir ce renseignement de l'une des personnes qu'il a le droit d'interroger au préalable ou de la personne qu'il désire interroger;

    *b*) qu'il est injuste d'exiger que l'instance soit instruite sans que le requérant de la requête ait la possibilité d'interroger cette personne;

    *c*) que l'interrogatoire n'aura pas pour effet, selon le cas :

    (i)    de retarder indûment le début de l'instruction de l'instance,
    (ii)   d'entraîner des dépenses injustifiées pour les autres parties,
    (iii)  de causer une injustice à la personne que le requérant désire interroger.

(3)   Sauf directive contraire de la Cour, la partie qui interroge oralement une personne en application du présent article signifie, sur demande, une transcription gratuite de l'interrogatoire à toute partie qui y a assisté ou qui s'y est fait représenter.

(4)   Sauf directive expresse contraire de la Cour, la partie interrogatrice n'a pas le droit de recouvrer d'une autre partie les dépens de l'interrogatoire.

(5)   La déposition d'une personne interrogée en application du présent article ne peut être consignée en preuve à l'audience aux fins du paragraphe 100(1).

11    The motions judge denied the Crown's motion on the basis that the 86 questions with respect to which discovery was being sought were oppressive, excessive and aimed at the improper purpose of impeaching Mr. Pearlman.

## POSITION OF THE PARTIES

12    On appeal, the Crown has narrowed down the questions with respect to which it seeks to examine Artistic from 86 to 6. Those which remain in issue are questions 41-44; 46 and 49, as summarized at paragraph 22 of the Crown's memorandum:

- **Composition of Groups**: A listing of the composition of the groups of prints and the number of each particular group sold in 1998, 1999 and 2000.
- **Dates of Sale and Donation and Prices Paid**: A listing by name of donor showing the date of purchase, the number of groups purchased, the price paid per groups and the date of the gift for 1998, 1999 and 2000.
- **Details by Donor**: A report for each donor showing the print titles acquired and charity selected for 1998, 1999 and 2000.
- **Details by Title**: A report by print title showing the names of the donors and the number of each title purchased for 1998, 1999 and 2000.
- **Details by Charity**: A report by charity showing the print titles and number of each title donated for 1998, 1999 and 2000.
- If Artistic cannot provide the above reports, what reports can be generated?

13    These questions are aimed at identifying the precise market into which the prints were sold with a view of establishing their fair market value. The position of the Crown, as I understand it, is that having regard to the 6 questions which they wish to pursue and their limited scope, all the conditions precedent for ordering a third party discovery under subsection 99(1) of the Tax Court Rules are met and the concerns raised by Bowman C.J. in dismissing the original application are no longer present.

14    In response, both Mr. Sackman and Artistic take the position that there was nothing in the original 86 questions that can assist the Crown in advancing its case and that the information sought was already in the possession of the Minister. Otherwise, they contend that Bowman C.J. properly dismissed the Crown's application for the reasons that he gave.

## ANALYSIS AND DECISION

15    The gist of the reasoning of Bowman C.J. for rejecting the appellant's motion as it was originally framed is as follows:

[24] On February 3, 2007, counsel for the respondent wrote to the solicitors for the appellant asking that Artistic provide answers to 86 questions which are attached as Schedule A to the letter. That schedule is attached as Appendix A. These are the questions that the Crown wants to put to the representative of Artistic. That representative (Mark Pearlman) has already been examined and cross-examined in Artistic's own appeal to the Tax Court of Canada [the G.S.T. appeal]. The transcript of a third party's examination cannot be used at trial in the same way as the discovery of a party is used. The questions have to do with the promotional activity of Artistic in selling the program. It may be that the Crown wants to have the transcript of the

representative of Artistic on the off chance that he is called as a witness. The transcript might be useful as a means of impeaching him. This is not a proper use of section 99. There is absolutely nothing in the questions in Appendix A that can assist in determining fmv. I regard the 86 questions in Schedule A as a case of overkill.

**16**   I believe it can safely be said that in rejecting the appellant's motion, Bowman C.J. was not putting his mind to the issue as it is now presented before us. His assessment of the 86 questions placed before him is that they had to do with Artistic's promotional activities. I do not dispute this general assessment. However, the six questions now being pursued, when looked upon on their own, do not come within that description. When regard is had to the remaining questions and the information that they seek, the Crown's motion can no longer be labelled as a case of "overkill".

**17**   The first question to address on a motion under subsection 99(1) of the *Tax Court Rules* is relevance. In this respect, there is no doubt that the information sought by the six questions is relevant to the determination of the market in which the artwork (i.e., the group of prints) is sold for the purpose of determining its fair market value (*Klotz, supra*; *Nash, supra*). To the extent that Bowman C.J. held otherwise, he was in error.

**18**   The second issue is whether the moving party has established that the information sought cannot otherwise be obtained either from persons whom it is entitled to examine for discovery, or from the person sought to be examined. In this respect, neither Mr. Sackman nor Artistic question the Crown's allegation that they have both refused, and continue to refuse, to provide the information sought. Furthermore, given that Artistic is not willing to confirm the accuracy of the facts underlying the Navigant Report, there is no basis for the respondents' assertion that the Crown already has the information being sought.

**19**   As to the third issue, an argument can be made that the Crown can defend its case on the basis of the fair market value of the artwork that it has so far assumed and that accordingly, no unfairness would result from the fact that the Crown is not in a position to establish a more precise valuation. However, the Crown, like the respondent, is entitled to put its best foot forward in this litigation and to the extent that it needs information from Artistic in order to place a more accurate figure on the value of the artwork, it should have access to it before trial.

**20**   Counsel for Artistic further argued that granting the motion would create unfairness for its client. In support of this contention, counsel expressed the concern that the information sought could be used against Artistic in the G.S.T. appeal before the Tax Court. In so stating, counsel recognized that the G.S.T. appeal has now been heard and that the matter is under advisement, so that there is no longer any practical likelihood of prejudice. However, counsel argues that in the event of an appeal, additional evidence can exceptionally be admitted. He adds that in some instances, matters are remitted back by the Court of Appeal, with directions that new evidence be allowed. That is the context in which counsel claims that the examination sought could be prejudicial and hence unfair, to his client.

**21**   The concern so expressed is based on an unlikely scenario that is far too speculative to support a conclusion of unfairness. Furthermore, the argument ignores the implied undertaking imposed on parties to a civil litigation not to use answers obtained for any other purpose than securing justice in the proceeding in which the answers were compelled (*Juman v. Doucette*, [2008] S.C.J. No. 8, para. 27). I should add that it is difficult to see how the information being sought, which pertains to the identification of the market into which the artwork was sold, could be relevant to the G.S.T. appeal as it was described to this Court.

**22**   Finally, counsel for Artistic argued that responding to the questions would entail unreasonable expenses. These expenses were estimated at $15,000 before Bowman C.J. at a time when 86 questions

were in play. Counsel for the Crown has reiterated his undertaking to reimburse Artistic for reasonable counsel fees up to $10,000. Given the limited number of questions which are outstanding, this is sufficient to address Artistic's costs concerns.

**23**     For these reasons, I would allow the appeal, set aside the decision of Bowman C.J., insofar as the six questions set out in paragraph 12 above are concerned, and giving the decision which ought to have been given, I would issue an order granting the Crown leave to examine a knowledgeable nominee of Artistic as a third party so that the Crown can obtain an answer to the said questions. The Crown should have its costs against both respondents.

NOËL J.A.
LINDEN J.A.:-- I agree
RYER J.A.:-- I agree

cp/e/qlaim/qlpxm/qltxp/qlrxg/qlcas/qlcxm/qlhcs

I

**THIS IS EXHIBIT "I"**
**referred to in the affidavit of**
**Laura Alescio**
**This 30ᵗʰ day of September, 2011**

**Commissioner for Taking Affidavits**

| | | | |
|---|---|---|---|
| **I◆I** | **Department of Justice**<br>**Canada** | **Ministère de la Justice**<br>**Canada** | |

| | | |
|---|---|---|
| Ontario Regional Office<br>The Exchange Tower<br>130 King Street West<br>Suite 3400, Box 36<br>Toronto, Ontario<br>M5X 1K6 | Bureau régional de l'Ontario<br>la tour Exchange<br>130 rue King ouest<br>Pièce 3400, CP 36<br>Toronto (Ontario)<br>M5X 1K6 | Tel:  (416) 952-7269<br>Fax:  (416) 973-0810<br>Email:  Laura.Alescio@justice.gc.ca |

Our File:
Notre dossier:   **3-504992**

Your File:
Votre dossier:

September 7, 2004

## VIA COURIER

Teplitsky Colson
Barristers & Solicitors
70 Bond Street
Suite 200
Toronto, Ontario
M5B 1X3

### Attention:  Joyce Harris

Dear Ms Harris:

Re:   **SACKMAN, Jeffrey v. H.M.Q.**
      **Court File No.:  2002-4824(IT)G**

Thank you for your message dated August 27, 2004.  In your message, you have advised us to send our questions for Artistic Ideas Inc. ("Artistic") to you.

Arnold Bornstein and Michael Appavoo are lawyers with the Department of Justice. They represent the Crown in the appeal of Jeffrey Sackman to the Tax Court of Canada. I am a paralegal assigned to assist them in that matter.

Mr. Sackman purchased and donated works through Artistic. Artistic has information that is relevant to his appeal. We would appreciate its cooperation in answering the questions set out below.

In order to assist it in answering those questions, we provide, as an attachment to this letter, a list of the works purchased by Mr. Sackman (the "List").

Would you be kind enough to let us know, on or before September 14, 2004, whether Artistic will attempt to answer the following questions?  If so, would Artistic please answer our questions by September 27, 2004?  Would you also please forward us a hard copy of those answers?

Canada

## Questions

**Acquisition of artwork**

Our understanding is that there are purchase agreements for the artwork between Coleman Fine Arts ("Coleman") or Silver Fine Arts ("Silver") and the purchasers/donors who acquire and donate that artwork through Artistic.

1)   How much did Coleman, Silver or Artistic pay for each of the works found in the List?

2)   For each print found on the List,

    a.   how many other prints from the same edition did Coleman or Silver obtain?

    b.   from whom did Coleman or Silver obtain the print and any other prints from the same edition? Please name the source.

3)   For each work, which is not a print, found on the List, from whom did Coleman or Silver obtain the work? Please name the source.

4)   Who specifically did Coleman or Silver engage to find the works?  Please name the finder(s).

5)   What instructions were given to the finder(s)?

6)   How was (were) the finder(s) remunerated?

7)   Were any of the works sold through Artistic created specifically for sale through Artistic?

8)   If so, who are the artists, and what are the titles, of such works?

9)   On what basis did Artistic, Coleman or Silver select the works that were sold to purchasers/donors?

10)   Are any of prints from the same editions as those sold to purchasers/donors through Artistic still in the inventory of Coleman or Silver?

**Sales arrangements**

We understand that Artistic arranged for the sale of the works to Canadians.

**_Duration_**

11)   When did Artistic begin to make works available to purchasers/donors?

12)   When did Artistic stop making such works available to purchasers/donors?

**Sellers**

13) How did Artistic solicit customers to buy and to donate the works? In other words, did it have its own internal sales staff or did it use independent salespersons? Or did it both have that staff and use those independent salespersons?

14) If Artistic engaged or dealt with salespersons to solicit customers, did Artistic pay the salespersons commissions?

15) If so, how were the commissions calculated?

16) What were the names of the independent salespersons, if any?

17) For which firms did the independent salespersons, if any, work?

**Gallery**

18) Did Artistic operate a gallery in Canada in which it displayed the works or samples of the works sold and donated?

19) If so,

    a.   where was the gallery located?

    b.   was the gallery open to the public?

    c.   when did Artistic first open the gallery?

    d.   when, if ever, did Artistic close the gallery?

**Scope of operations**

20) Did Artistic arrange for sales of works to Canadians in every province?

21) If not,

    a.   why not?

    b.   where did it not arrange for such sales?

22) Did Artistic have offices outside Toronto?

**Number of works sold**

23) How many works were sold through Artistic in:

    a.   1998?

    b.   1999?

    c.    2000?

    d.    2001?

    e.    2002?

24)    Did Artistic ever sell a single work to a purchaser as opposed to selling a work as part of a group?

25)    If so,

    a.    who is the artist, and what is the title, of each such work that each such purchaser bought?

    b.    when did each such sale occur? Please answer on a work-by-work basis.

    c.    what price did the purchaser pay for the work? Please answer on a work-by-work and purchaser-by-purchaser basis.

    d.    did the price paid include GST?

    e.    did the price paid include PST?

**Charities**

We understand that Artistic arranged for the donation of the artwork purchased through it to charities.

26)    How did Artistic select those charities?

27)    Did the purchaser/donor have any input into the selection of the charities to which he or she donated his or her works?

**Appraisals**

We understand that appraisers valued either the works donated by Mr. Sackman or works from the same editions as the works donated by Mr. Sackman. The appraisers were Leslie Fink, Edith Yeomans and Charles Rosoff. The appraisals by Yeomans and Rosoff are addressed to representatives of Artistic.

***Fink***

28)    Who recommended the appraiser, Leslie Fink, to Artistic?

29)    Who paid for the appraisals Fink made?

30)    How many appraisals did Fink prepare for Artistic in:

a. 1999?

b. 2000?

c. 2001?

d. 2002?

31) How much was Fink paid for each such appraisal?

32) Please provide a copy of any contract or agreement with or retainer for Fink.

33) Does Artistic have Finks' working papers, supporting documents, and/or correspondence related to the appraisals that Fink prepared for Artistic? If so, would it provide us with copies of those documents?

## Yeomans

34) Who recommended the appraiser, Edith Yeomans, to Artistic?

35) Who paid for the appraisals Yeomans made?

36) How many appraisal reports did Yeomans prepare for Artistic in:

a. 1999?

b. 2000?

c. 2001?

d. 2002?

37) How much was she paid for each such appraisal?

38) Please provide a copy of any contract or agreement with or retainer for Yeomans.

39) Does Artistic have Yeoman's working papers, supporting documents, and/or correspondence related to the appraisals Yeomans prepared for Artistic? If so, would it provide us with copies of those documents?

## Rosoff

40) Who recommended the appraiser, Charles Rosoff, to Artistic?

41) Who paid for the appraisals Rosoff made?

42) How many appraisal reports did Rosoff prepare for Artistic in:

    a.    1999?

    b.    2000?

    c.    2001?

    d.    2002?

43) How much was he paid for each such appraisal?

44) Please provide a copy of any contract or agreement with or retainer for Rosoff.

45) Does Artistic have Rosoff's working papers, supporting documents, and/or correspondence related to the appraisals Rosoff prepared for Artistic? If so, would it provide us with copies of those papers?

### Generally

46) What information did Artistic give to each of the appraisers for the works those appraisers valued?

47) What documents did Artistic give to each of the appraisers for the works those appraisers valued?

48) Please provide copies of all such documents to us.

49) Why did Artistic make the works sold through it available at less than the fair market values established by Fink, Yeomans or Rosoff?

### Sales of prints

50) For each of the prints purchased by Mr. Sackman,

    a.    how many other purchasers, who dealt with Artistic, bought prints from the same edition? Please provide your answers on a print-by-print basis.

    b.    on what date did each such purchaser buy his or her print? Please answer this question on a purchaser-by-purchaser and print-by-print basis.

    c.    how much did each such purchaser pay for his or her print? Please answer this question on a purchaser-by-purchaser and print-by-print basis.

51) Please state whether each such purchaser entered into a purchase agreement with Coleman or with Silver. Please answer this question on a purchaser-by-purchaser and print-by-print basis.

52) Concerning the price, which each such purchaser paid for his or her print, we have the following questions:

    a.    did the price include GST? Please answer this question on a purchaser-by-purchaser and print-by-print basis.

    b.    did the price include PST? Please answer this question on a purchaser-by-purchaser and print-by-print basis.

    c.    how was the price calculated? In particular, did each print have an individual price?

53)    Were there any prints from the same editions as the prints purchased by Mr. Sackman, which were obtained by Coleman, Silver or Artistic, and which were not sold through Artistic?

    a.    if so, what happened to those prints?

**Sales of works other than prints**

Mr. Sackman might have purchased artwork that was not a print.

54)    For each such work,

    a.    how many other purchasers, who dealt with Artistic, bought a work, other than a print, by the same artist? Please answer this question on a work-by-work basis.

    b.    on what date did each such purchaser buy such a work? Please answer this question on a purchaser-by-purchaser and work-by-work basis.

    c.    how much did each such purchaser pay for such a work? Please answer this question on a purchaser-by-purchaser and work-by-work basis.

55)    Please state whether each such purchaser entered into a purchase agreement with Coleman or with Silver. Please answer this question on a purchaser-by-purchaser and work-by-work basis.

56)    Concerning the price, which each such purchaser paid for his or her work, we have the following questions:

    a.    did the price include GST? Please answer this question on a purchaser-by-purchaser and work-by-work basis.

    b.    did the price include PST? Please answer this question on a purchaser-by-purchaser and work-by-work basis.

    c.    how was the price calculated? In particular, did each work have an individual price?

57) Were there works by the same artists as the non-print works purchased by Mr. Sackman, which were obtained by Coleman, Silver or Artistic, and which were not sold through Artistic?

    a.    if so, what happened to those works?

Thank you for your assistance in this matter.

Yours truly,

*Laura Alescio*

Laura Alescio
Paralegal
Tax Law Services Section

Encl.

| Print Name | Artist |
|---|---|
| Anemonies | Faulconer |
| Anemonies | Faulconer |
| Anemonies | Faulconer |
| Apple Blossom | D'Orazio |
| Apple Blossom | D'Orazio |
| Apple Blossom | D'Orazio |
| Apple Blossom Glory | Ameche |
| Apple Blossom Glory | Ameche |
| Apple Blossom Glory | Ameche |
| Apple Blossom Glory | Ameche |
| Apple Blossom Glory | Ameche |
| Apples | Karwoski |
| Artist and Model | Jonson |
| Artist and Model | Jonson |
| Artist and Model | Jonson |
| Ballet 1 (Pink) | Jonson |
| Ballet 1 (Pink) | Jonson |
| Ballet 1 (Pink) | Jonson |
| Ballet 2 (red) | Jonson |
| Ballet 2 (red) | Jonson |
| Ballet 2 (red) | Jonson |
| Beach at Brighton | Faulconer |
| Beach at Brighton | Faulconer |
| Beach at Brighton | Faulconer |
| Beauty and the Beast | Bragg |
| Beauty and the Beast | Bragg |
| Beauty and the Beast | Bragg |
| Belly Dancer | Pardo |
| Belly Dancer | Pardo |
| Belly Dancer | Pardo |

| PrintName | Artis |
|---|---|
| Blue Bouquet | Ensrud |
| Blue Bouquet | Ensrud |
| Boldest Native | Knight |
| Boldest Native | Knight |
| Boldest Native | Knight |
| Boldest Native | Knight |
| Boldest Native | Knight |
| Buena Fortuna | Faulconer |
| Buena Fortuna | Faulconer |
| Buena Fortuna | Faulconer |
| Buena Fortuna | Faulconer |
| Buena Fortuna | Faulconer |
| Butterfly Cup | Faulconer |
| Butterfly Cup | Faulconer |
| Butterfly Cup | Faulconer |
| Calvary Charge | Schaare |
| Calvary Charge | Schaare |
| Calvary Charge | Schaare |
| Calvary Charge | Schaare |
| Calvary Charge | Schaare |
| Camelot (Knight Rider) | Bragg |
| Circle of Church | Rabinovich |
| Circle of Church | Rabinovich |
| Contraction | Peters |
| Contraction | Peters |
| Country Paradise (Eisenhower Farm) | Ameche |
| Country Paradise (Eisenhower Farm) | Ameche |
| Country Paradise (Eisenhower Farm) | Ameche |
| Country Paradise (Eisenhower Farm) | Ameche |

| Print Name | Artist |
|---|---|
| Crossing the Divide | Purcell |
| Crossing the Divide | Purcell |
| Crossing the Divide | Purcell |
| Crossing the Divide | Purcell |
| Crossing the Divide | Purcell |
| Crossing the Divide | Purcell |
| Crossing the Divide | Purcell |
| Crystal (blue) | Peters |
| Crystal (blue) | Peters |
| Crystal (blue) | Peters |
| Crystal (blue) | Peters |
| Cycle II | Rosenblum |
| Cycle II | Rosenblum |
| Cycle III | Rosenblum |
| Day on a Farm | Ameche |
| Day on a Farm | Ameche |
| Day on a Farm | Ameche |
| Desperado | Jonson |
| Desperado | Jonson |
| Desperado | Jonson |
| Early Morning Departure | Muller, Dodi |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Emergence | Laventhol |
| Fall Ferns | Faulconer |
| Fall Ferns | Faulconer |
| Fall Ferns | Faulconer |

| Print Name | Artist |
|---|---|
| Falling in Love | Simon |
| Falling in Love | Simon |
| Falling in Love | Simon |
| Falling in Love | Simon |
| Fan Figuration | Peters |
| Fan Figuration | Peters |
| Fan Figuration | Peters |
| Fan Figuration | Peters |
| Geese In Flight | Forrest |
| Geese In Flight | Forrest |
| Geese In Flight | Forrest |
| Gold Field 1905 | Purcell |
| Gold Field 1905 | Purcell |
| Gold Field 1905 | Purcell |
| Grand Canyon Suite II | Purcell |
| Grand Canyon Suite II | Purcell |
| Grand Canyon Suite II | Purcell |
| Grand Canyon Suite II | Purcell |
| Grand Canyon Suite II | Purcell |
| Green Winged Teal | Forrest |
| Green Winged Teal | Forrest |
| Green Winged Teal | Forrest |
| Guilty -Objection Overruled | Bragg |
| Guilty -Objection Overruled | Bragg |
| Head & Upper Torso | Clift |
| Head & Upper Torso | Clift |
| Head & Upper Torso | Clift |
| Herbs on Pink Background | Faulconer |
| Herbs on Pink Background | Faulconer |
| Herbs on Pink Background | Faulconer |
| Herbs on Pink Background | Faulconer |
| Herbs on Pink Background | Faulconer |

| PrintName | ArtistName |
|---|---|
| Heroes | Brusca |
| Heroes | Brusca |
| Heroes | Brusca |
| Imaginary Triangle | Peters |
| Imaginary Triangle | Peters |
| Impressions | Christiansen |
| Impressions | Christiansen |
| Impressions | Christiansen |
| In the Clear | Knigin |
| In the Clear | Knigin |
| In the Clear | Knigin |
| In the Clear | Knigin |
| Infinitive | Peters |
| Infinitive | Peters |
| Infinitive | Peters |
| Interchange | Peters |
| Interchange | Peters |
| Interchange | Peters |
| Interchange | Peters |
| Island Woman | Azuz |
| Island Woman | Azuz |
| Johnny Jump Up | Faulconer |
| Johnny Jump Up | Faulconer |
| Johnny Jump Up | Faulconer |
| Kahlua Lark - Horse and Dog | McLean, Richard |
| Kahlua Lark - Horse and Dog | McLean, Richard |
| Kahlua Lark - Horse and Dog | McLean, Richard |
| Le Bistro | Azuz |
| Le Bistro | Azuz |

| Print Name | Artist |
|---|---|
| Le Bistro | Azuz |
| Looking for Strays | Purcell |
| Looking for Strays | Purcell |
| Looking for Strays | Purcell |
| Mount Shasta | Ameche |
| Mount Shasta | Ameche |
| Mount Shasta | Ameche |
| Nocturne | Bragg |
| Nocturne | Bragg |
| Nocturne | Bragg |
| Oh for a Horse | Purcell |
| Oh for a Horse | Purcell |
| Oh for a Horse | Purcell |
| Oh for a Horse | Purcell |
| On the Spanish Trail | Purcell |
| On the Spanish Trail | Purcell |
| On the Spanish Trail | Purcell |
| On the Spanish Trail | Purcell |
| Pansies | Faulconer |
| Pansies | Faulconer |
| Pansies | Faulconer |
| Pansies | Faulconer |
| Pansies | Faulconer |
| Pansies | Faulconer |
| Paris Barge | Faulconer |
| Paris Barge | Faulconer |
| Peregrine | Forrest |
| Peregrine | Forrest |
| Peregrine | Forrest |
| Pinwheel | Peters |
| Pinwheel | Peters |

| Print Name | |
|---|---|
| Portrait of an Old Flyer | Clift |
| Portrait of an Old Flyer | Clift |
| Portrait of an Old Flyer | Clift |
| Portrait of an Old Flyer | Clift |
| Portrait of an Old Flyer | Clift |
| Portrait of an Old Flyer | Clift |
| Portrait of an Old Flyer | Clift |
| Ready CB | Bragg |
| Ready CB | Bragg |
| Ready CB | Bragg |
| Red Ferns | Faulconer |
| Red Ferns | Faulconer |
| Reflected Landscape | Simon |
| Reflected Landscape | Simon |
| Reflected Landscape | Simon |
| Reflected Landscape | Simon |
| Santa Margharita | Ensrud |
| Santa Margharita | Ensrud |
| Satin Doll | McLean, Richard |
| Seven Deadly Sins - Anger | Bragg |
| Seven Deadly Sins - Anger | Bragg |
| Seven Deadly Sins - Anger | Bragg |
| Seven Deadly Sins - Envy | Bragg |
| Seven Deadly Sins - Envy | Bragg |
| Seven Deadly Sins - Gluttony | Bragg |
| Seven Deadly Sins - Gluttony | Bragg |
| Seven Deadly Sins - Gluttony | Bragg |
| Seven Deadly Sins - Greed | Bragg |
| Seven Deadly Sins - Greed | Bragg |
| Seven Deadly Sins - Lust | Bragg |
| Seven Deadly Sins - Lust | Bragg |

| Print Name | Artist |
|---|---|
| Seven Deadly Sins - Lust | Bragg |
| Seven Deadly Sins - Vanity | Bragg |
| Seven Deadly Sins - Vanity | Bragg |
| Sienna | Carter Clarence |
| Sienna | Carter Clarence |
| Sienna | Carter Clarence |
| Skier | Jonson |
| Skier | Jonson |
| Skier | Jonson |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Skiing II | Schaare |
| Spring Bouquet | Faulconer |
| Spring Bouquet | Faulconer |
| Spring Bouquet | Faulconer |
| Spring Bouquet | Faulconer |
| Spring Bouquet | Faulconer |
| Spring Bouquet | Faulconer |
| Spring Hope - Robins Eggs | Faulconer |
| Spring Hope - Robins Eggs | Faulconer |
| Spring Hope - Robins Eggs | Faulconer |
| Springtime in Gettysburg | Ameche |
| Springtime in Gettysburg | Ameche |
| Springtime in Gettysburg | Ameche |
| Springtime in Gettysburg | Ameche |
| Springtime in Gettysburg | Ameche |

| Print Name | Last Artist |
|---|---|
| Springtime in Gettysburg | Ameche |
| State 2 Mohawk | Melnick |
| State 2 Mohawk | Melnick |
| Sweet Violet - Rose/Flower | Brusca |
| Sweet Violet - Rose/Flower | Brusca |
| Sweet Violet - Rose/Flower | Brusca |
| Sweet Violet - Rose/Flower | Brusca |
| The Blacksmith Shop | Purcell |
| The Blacksmith Shop | Purcell |
| The Blacksmith Shop | Purcell |
| The Blacksmith Shop | Purcell |
| The Blacksmith Shop | Purcell |
| The Blacksmith Shop | Purcell |
| The Chess Player | Bragg |
| The Chess Player | Bragg |
| The Eighth Day | Bragg |
| The Eighth Day | Bragg |
| The Eighth Day | Bragg |
| The Music Lesson | Bragg |
| The Music Lesson | Bragg |
| The Music Lesson | Bragg |
| Veterinarian | Bragg |
| Waiting for the new arrival | Purcell |
| Waiting for the new arrival | Purcell |
| Waiting for the new arrival | Purcell |
| Waiting for the new arrival | Purcell |
| Waiting for the new arrival | Purcell |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |

ix

| Print Name | Last Artist |
|---|---|
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Willowbrook Road | Christiansen |
| Winter | Ameche |
| Winter | Ameche |
| Winter | Ameche |
| Winter | Ameche |
| Winter | Ameche |
| Winter | Ameche |
| Woman Playing a Poppin | Knigin |
| Woman Playing a Poppin | Knigin |
| Woman Playing a Poppin | Knigin |
| Writing Box | Faulconer |
| Writing Box | Faulconer |
| Writing Box | Faulconer |
| Writing Box | Faulconer |
| Writing Box | Faulconer |
| Writing Box | Faulconer |
| Your Witness | Bragg |

| Print Name | Artist |
| --- | --- |
| Litho 'Rainbow Reef' | BraggCL |
| Litho 'Nature morte sur gueridon' | Picasso |
| Litho 'Portrait of Olga Picasso' | Picasso |
| Litho 'By Appointment' | BraggCharles |
| Litho 'Anesthestia 1848' | BraggCharles |
| Litho 'Justice Department, Retroactive Division' | BraggCharles |
| Litho 'Les fils de l'artiste (enfant dejeunant)' | Picasso |
| Litho 'Night Vision' | BraggCL |
| Litho 'Antique Ambulance' | BraggCharles |
| Litho 'Marc Chagall' | BraggCharles |
| Litho 'Chevalier en armure, page et femme nue' | Picasso |
| Litho 'Femme assise dans un fauteuil tresse' | Picasso |
| Litho 'Rainbow Reef' | BraggCL |
| Litho 'Sleeper II' | BraggCL |
| Litho 'Tete de morte, lampe cruches et poireaux' | Picasso |
| Litho 'Tete de morte, lampe cruches et poireaux' | Picasso |
| Litho 'Tete de morte, lampe cruches et poireaux' | Picasso |
| Litho 'Nature morte au verre' | Picasso |
| Litho 'Nature morte au verre' | Picasso |
| Litho 'Nature morte au verre' | Picasso |
| Litho 'Portrait d'un homme debout avec barbiche' | Picasso |
| Litho 'Portrait d'un homme debout avec barbiche' | Picasso |
| Litho 'Portrait d'un homme debout avec barbiche' | Picasso |
| Litho 'And He Saw that it was good (manbaby)' | BraggCharles |
| Litho 'And He Saw that it was good (manbaby)' | BraggCharles |
| Litho 'Rainbow Reef' | BraggCL |
| Litho 'The Perfect Couple(golfers)' | BraggCharles |

| Print Name | Artist |
|---|---|
| Litho 'Tete de morte, lampe cruches et poireaux' | Picasso |
| Litho 'Cosmic Dance' | BraggCL |
| Litho 'Justice Department, Retroactive Division' | BraggCharles |
| Litho 'Les fils de l'artiste (enfant dejeunant)' | Picasso |
| Litho 'Psychiatrist' | BraggCharles |
| Litho 'The Emperor Takes a Leak 2' | BraggCL |
| Litho 'Jungle Story' | BraggCL |
| Litho 'The Fifth Day' | BraggCharles |
| Litho 'The Jury' | BraggCharles |
| Litho 'The Klondike Bar and Grill' | BraggCharles |
| Litho 'Cultured Cat' | BraggCL |
| Litho 'Chevalier en armure, page et femme nue' | Picasso |
| Litho 'African Watering Hole' | BraggCL |
| Litho 'Rainbow Reef' | BraggCL |
| Litho 'Don Quixote(on horse)' | BraggCharles |
| Litho 'Anesthestia 1848' | BraggCharles |
| Litho 'Viking' | BraggCharles |
| Litho 'Morning (1st edition)' | BraggCL |
| Litho 'The Emperor Takes a Leak' | BraggCL |
| Litho 'Song of the Sea' | BraggCL |
| Litho 'Antique Ambulance' | BraggCharles |
| Litho 'Cyrano de Bergerac' | BraggCharles |
| Litho 'Marc Chagall' | BraggCharles |
| Litho 'Open House' | BraggCharles |
| Litho 'Legend of Aurora' | BraggCL |
| Litho 'Morning (1st edition)' | BraggCL |
| Litho 'Quatre Nus au Harem' | Picasso |
| Litho 'And He Saw that it was good (maribaby)' | BraggCharles |
| Litho 'Tete de femme' | Picasso |

| Print Name | Artist(s) |
|---|---|
| Litho 'Portrait of Marie-Therese Walter' | Picasso |
| Litho 'Portrait of Marie-Therese Walter' | Picasso |
| Litho 'Portrait of Marie-Therese Walter' | Picasso |
| Litho 'Femme assise dans un fauteuil' | Picasso |
| Litho 'Femme assise dans un fauteuil' | Picasso |
| Litho 'Femme assise dans un fauteuil' | Picasso |
| Litho 'Jeux de page' | Picasso |
| Litho 'Jeux de page' | Picasso |
| Litho 'Jeux de page' | Picasso |
| Litho 'Tete de femme' | Picasso |
| Litho 'Quatre Nus au Harem' | Picasso |
| Litho 'Femme au chapeau gris' | Picasso |
| Litho 'Arlequin moustache a la guitare' | Picasso |
| Litho 'Arlequin moustache a la guitare' | Picasso |
| Litho 'Femme assise dans un fauteuil tresse' | Picasso |
| Litho 'Femme assise dans un fauteuil tresse' | Picasso |
| Litho 'Le Bouquet' | Picasso |
| Litho 'Le Bouquet' | Picasso |
| Litho 'Pigeons' | Picasso |
| Litho 'Pigeons' | Picasso |
| Litho 'Femme debout' | Picasso |
| Litho 'Femme debout' | Picasso |
| Litho 'Swan Song' | BraggCL |
| Litho 'Quatre Nus au Harem' | Picasso |
| Litho 'Femme dans un fauteuil' | Picasso |
| Litho 'Swan Song' | BraggCL |
| Litho 'Legend of Aurora' | BraggCL |
| Litho 'Rescue the Reef' | BraggCL |
| Litho 'Rescue the Reef' | BraggCL |

| Print Name | Artist |
| --- | --- |
| Litho 'Rescue the Reef' | BraggCL |
| Litho 'Visage de femme de face' | Picasso |
| Litho 'Visage de femme de face' | Picasso |
| Litho 'Visage de femme de face' | Picasso |
| Litho 'The Sixth Day' | BraggCharles |
| Litho 'The Sixth Day' | BraggCharles |
| Litho 'The Sixth Day' | BraggCharles |
| Litho 'Tete de femme' | Picasso |
| Litho 'Femme dans un fauteuil'' | Picasso |
| Litho 'Legend of Aurora' | BraggCL |
| Litho 'Beauty and the Reef' | BraggCL |
| Litho 'Beauty and the Reef' | BraggCL |
| Litho 'Beauty and the Reef' | BraggCL |
| Litho 'Buste de petite fille' | Picasso |
| Litho 'Buste de petite fille' | Picasso |
| Litho 'Buste de petite fille' | Picasso |
| Litho 'Song of the Sea' | BraggCL |
| Litho 'Song of the Sea' | BraggCL |
| Litho 'Song of the Sea' | BraggCL |
| Litho 'Femme au chapeau gris' | Picasso |
| Litho 'Femme au chapeau gris' | Picasso |
| Litho 'Femme dans un fauteuil'' | Picasso |

J